IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
2096 Walsh Ave, Ste C1
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JAMES ALGER,

Plaintiff,

v.

CREAM & SUGAR, INC., a California corporation, dba CLAYTON'S COFFEE SHOP; and CLAYTON'S CORONADO CORNER, LLC, a California limited liability company,

Defendants.

**Case No.:** '26CV5691 RSH AHG

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

**[42 U.S.C. § 12181 *et seq.*]**

## INTRODUCTION

1. Plaintiff JAMES ALGER ("Plaintiff") brings this action against Defendants CREAM & SUGAR, INC., a California corporation doing business as Clayton's Coffee Shop, and CLAYTON'S CORONADO CORNER, LLC, a California limited liability company (collectively, "Defendants"), for violations of

Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* (the "ADA"), and its implementing regulations. Plaintiff seeks only injunctive and declaratory relief, together with reasonable attorneys' fees, litigation expenses, and costs.

2. Plaintiff is, and at all relevant times was, an individual with a physical disability that substantially limits one or more major life activities. Plaintiff relies on a mobility scooter or wheelchair for mobility.

3. In June 2026, Plaintiff visited Clayton's Coffee Shop, a restaurant located at 979 Orange Avenue, Coronado, California 92118 (the "Restaurant"), intending to purchase and eat a meal. Upon entering, Plaintiff discovered that the Restaurant provided no accessible seating: the interior tables and booths lacked accessible dining surfaces, the interior dining counter provided no lowered accessible portion, and the exterior tables were obstructed by wide umbrella bases that eliminated the knee and toe clearance he needs to pull his mobility device up to a table.

4. Because of these barriers, Plaintiff could not dine at the Restaurant on the same terms as nondisabled patrons, and he left. Plaintiff enjoys diners of this kind, intends to return to the Restaurant, and is presently deterred from doing so by the barriers alleged herein.

5. Plaintiff brings this action to compel Defendants to bring the Restaurant into compliance with the ADA so that he, and others with mobility disabilities, can use it.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States, namely Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

7. Venue is proper in the Southern District of California because the real

property that is the subject of this action is located in Coronado, San Diego County, California, within this judicial district; a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this district.

**PARTIES**

8. Plaintiff JAMES ALGER is, and at all times relevant here was, a qualified individual with a disability. Plaintiff has Charcot-Marie-Tooth disease, a hereditary disorder of the peripheral nerves that control the muscles and that causes progressive loss of strength, function, and sensation in the hands, arms, legs, and feet. This physical impairment substantially limits Plaintiff's major life activities, including walking, standing, and performing manual tasks. As a result, Plaintiff relies on a mobility scooter or a wheelchair for mobility. Plaintiff resides in Porter Ranch, California.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendant CREAM & SUGAR, INC. ("Cream & Sugar") is a California corporation (California Secretary of State Entity No. 3432570) with its principal office at 979 Orange Avenue, Coronado, California 92118, and that at all times relevant to this Complaint, including on the date of Plaintiff's visit, Cream & Sugar owned, operated, and/or leased the Restaurant, doing business as "Clayton's Coffee Shop".

10. Plaintiff is informed and believes, and on that basis alleges, that Defendant CLAYTON'S CORONADO CORNER, LLC ("Clayton's Coronado Corner") is a California limited liability company (California Secretary of State Entity No. 200335610110) that, at all times relevant to this Complaint, has owned the real property on which the Restaurant is located, San Diego County Assessor's Parcel No. 537-341-12, and leases that property to the operator of the Restaurant.

11. Under Title III of the ADA, both the landlord who owns a building that houses a place of public accommodation and the tenant who owns or operates

the place of public accommodation are subject to the requirements of Title III, and any allocation of responsibility between them by lease or other contract does not relieve either party of its obligations under the ADA as to Plaintiff. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

12. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times each Defendant was the agent of the other Defendant, and in doing the things alleged herein was acting within the course and scope of that agency and with the knowledge, consent, and ratification of the other Defendant.

## FACTUAL ALLEGATIONS

### A. The Restaurant

13. The Restaurant is a full-service diner located at 979 Orange Avenue in Coronado, California, along Orange Avenue, Coronado's principal commercial corridor. The Restaurant serves food and drink to the public, including breakfast, lunch, and burgers, and offers both interior and exterior seating.

14. The Restaurant is a "place of public accommodation" within the meaning of Title III of the ADA because it is "a restaurant, bar, or other establishment serving food or drink" whose operations affect commerce. 42 U.S.C. § 12181(7)(B); 28 C.F.R. § 36.104.

15. Dining surfaces, accessible routes connecting the Restaurant's dining areas, sales and service counters, and the Restaurant's restroom are among the facilities, privileges, and advantages that the Restaurant offers to its patrons.

### B. Plaintiff's Visit to the Restaurant

16. In June 2026, Plaintiff was in the San Diego area as part of a multi-day trip during which he visited Coronado and the San Diego Zoo. While enjoying Coronado that day, Plaintiff came upon the Restaurant and, being hungry, decided to stop for a meal.

17. Plaintiff particularly enjoys diners because they typically offer a broad

menu, such as breakfast, burgers, and other comfort food, in one place. The Restaurant, notwithstanding its name, is a classic diner of exactly the kind Plaintiff seeks out.

18. Before entering, Plaintiff observed that the Restaurant's exterior tables, which otherwise might have served as accessible seating, were each fitted with a center-post umbrella anchored by a wide base beneath the table. These umbrella bases occupied the space under the tables and eliminated the knee and toe clearance Plaintiff needs to pull his mobility device up to a table, rendering the exterior tables unusable by him:



19. Plaintiff proceeded a few feet inside the Restaurant and immediately realized that the Restaurant did not appear to offer any accessible seating at all. The interior seating consisted of booths and tables configured such that, to use them, Plaintiff would either have had to remain in his mobility device positioned in the aisle, obstructing the path of travel for staff and other patrons, or transfer out of his mobility device into a booth seat, which he cannot do safely or independently.

20. The Restaurant's main interior counter was a bar-height counter that did not provide any lowered section at which Plaintiff could sit and dine from his mobility device:






21. Because there was no accessible table or counter at which he could dine, inside or out, Plaintiff was denied the full and equal enjoyment of the Restaurant. He left without dining, and experienced difficulty, frustration, and embarrassment as a result.

**C. Barriers to Access at the Restaurant**

22. Following Plaintiff's visit, and as part of counsel's pre-filing investigation, Plaintiff's counsel retained a Certified Access Specialist ("CASp"), who evaluated the Restaurant. Based on Plaintiff's personal observations and the CASp's evaluation, Plaintiff is informed and believes, and on that basis alleges, that the following barriers to access, each of which relates to Plaintiff's mobility disability, exist at the Restaurant:

1) Exterior service counter: The exterior service counter is approximately 45 inches high (2010 Standards §§ 227.3, 904.4, 904.4.1);

2) Exterior dining tables: None of the exterior tables provides an accessible dining surface, because umbrella bases located beneath the tables obstruct the required knee and toe clearance, and at least five percent of the exterior seating spaces are therefore not accessible (2010 Standards §§ 226.1, 226.2, 305, 306, 902.2, 902.3);

3) Interior booths: The interior booths and tables do not provide accessible dining surfaces with compliant clear floor space and knee and toe clearance for at least five percent of the interior seating spaces (2010 Standards §§ 226.1, 226.2, 902);

4) Interior counter seating: The interior dining counter is higher than 34 inches above the finish floor and provides no accessible dining surface between 28 and 34 inches high with compliant knee and toe clearance (2010 Standards §§ 226.1, 305, 306, 902.2, 902.3);

5) <u>Interior aisles</u>: The interior aisles and route connecting the Restaurant's entrance and its dining areas and elements have a clear width of approximately 17 inches at points, less than the 36-inch minimum clear width required for an accessible route (2010 Standards § 403.5.1);

6) <u>Restroom lavatory</u>: The lavatory does not provide the knee and toe clearance required for a forward approach (2010 Standards §§ 306, 606.2);

7) <u>Flush control</u>: The water closet flush control is not located on the open side of the water closet (2010 Standards § 604.6);

8) <u>Toilet paper dispenser</u>: The toilet paper dispenser is approximately 24 inches in front of the water closet rather than 7 to 9 inches in front of the water closet measured to its centerline (2010 Standards § 604.7);

9) <u>Water closet clearance</u>: The clearance around the water closet is inadequate, with only approximately 28 inches of clear space in front of the water closet (2010 Standards § 604.3);

10) <u>Paper towel dispenser/hand dryer</u>: The operable part of the paper towel dispenser and/or hand dryer is approximately 56 inches above the finish floor, outside the maximum reach range (2010 Standards §§ 308, 309).

11) <u>Mirror</u>: The bottom edge of the reflecting surface of the mirror is approximately 58 inches above the finish floor (2010 Standards § 603.3);

12) <u>Restroom turning space</u>: The restroom, measuring approximately 46 inches by 56 inches as configured, does not provide a compliant wheelchair turning space (2010 Standards §§ 304, 603.2.1);

13) Restroom door handle: The restroom door handle requires twisting of the wrist to operate (2010 Standards §§ 309.4, 404.2.7);

14) Restroom privacy lock: The restroom privacy lock requires pinching to operate (2010 Standards §§ 309.4, 404.2.7);

15) Grab bar height: The grab bars at the water closet are mounted higher than 36 inches above the finish floor, measured to the top of the gripping surface (2010 Standards § 609.4); and

16) Grab bar length and location: The side-wall and rear-wall grab bars do not have the required lengths and are not in the required locations (2010 Standards §§ 604.5.1, 604.5.2, 609).

23. Because Plaintiff has standing to challenge the barriers he personally encountered, he may also challenge all other barriers at the Restaurant that relate to his disability, including barriers identified by his CASp following his visit.

24. The barriers identified above are those of which Plaintiff is presently aware. Plaintiff alleges them without prejudice to amending this Complaint to identify additional barriers related to his disability that are discovered through inspection under Federal Rule of Civil Procedure 34 or otherwise, so that Plaintiff may obtain a single injunction remedying all such barriers.

25. In addition to the structural barriers described above, Plaintiff is informed and believes, and on that basis alleges, that Defendants place, or permit the placement of, tables, chairs, umbrellas and umbrella bases, and other furnishings within dining surfaces and the accessible route, and that this condition results from Defendants' policies and practices regarding the arrangement and maintenance of furniture and fixtures at the Restaurant and from Defendants' failure to maintain accessible features in operable working condition. 28 C.F.R. § 36.211.

**D. Plaintiff's Intent to Return and Present Deterrence**

26. Plaintiff has a genuine and concrete intention to return to the Restaurant to dine there as a customer.

27. Plaintiff regularly travels to San Diego County, including the Coronado area, for recreation and leisure. His visit to the Restaurant occurred during one such trip, a multi-day visit to the area during which he visited Coronado and the San Diego Zoo.

28. Because the Restaurant is located on Orange Avenue, the main thoroughfare and commercial district of Coronado, Plaintiff will necessarily pass it when he returns to Coronado, and he would dine at the Restaurant during that trip and on his future trips to Coronado if it were accessible.

29. Plaintiff is drawn specifically to the Restaurant. He enjoys diners because of their broad menus, and the Restaurant offers the classic diner menu. The Restaurant is the type of establishment Plaintiff seeks out when he travels, and its convenient location along Coronado's main street makes it a natural place for him to eat when visiting.

30. Plaintiff, however, now has actual knowledge of the barriers at the Restaurant. He knows that, as presently configured, the Restaurant offers him no table or counter at which he can dine, inside or outside, and that its interior route and restroom are not accessible to him. Plaintiff is therefore currently deterred from returning to the Restaurant, and he will continue to be deterred from patronizing it until those barriers are removed.

31. Plaintiff is not required to engage in the futile gesture of returning to the Restaurant while he knows that Defendants do not intend to comply with the ADA. A disabled individual who is deterred from visiting a place of public accommodation because of accessibility barriers he knows exist suffers an

ongoing, actual injury sufficient to confer standing to seek injunctive relief, so long as he would return if the barriers were removed.

32. Absent injunctive relief, Plaintiff faces a real and immediate threat of future injury: he will continue to be deterred from patronizing the Restaurant, and if he returns before the barriers are removed, he will again be denied full and equal access to it.

**CLAIM FOR RELIEF**

**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

**[42 U.S.C. § 12181 *et seq.*]**

**(Against All Defendants)**

33. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

34. Title III of the ADA holds as a "general rule" that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

35. The Restaurant is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(B). Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102(1). Defendants own, lease (or lease to), and/or operate the Restaurant within the meaning of 42 U.S.C. § 12182(a).

36. Defendants discriminated against Plaintiff on the basis of his disability by denying him the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, and accommodations of the Restaurant, as alleged above.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

37. Discrimination under Title III includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

38. Removal of each of the barriers alleged herein is, and at all relevant times was, readily achievable. The Department of Justice regulations identify as examples of readily achievable barrier removal many of the very measures required here, including "[r]earranging tables, chairs, vending machines, display racks, and other furniture," "[i]nstalling accessible door hardware," "[i]nstalling grab bars in toilet stalls," "[r]earranging toilet partitions to increase maneuvering space," "[i]nstalling a full-length bathroom mirror," and "[r]epositioning the paper towel dispenser in a bathroom." 28 C.F.R. § 36.304(b)(4), (11)–(13), (16)–(17).

39. Specifically, the dining barriers can be remedied by replacing a sufficient number of exterior tables, or relocating their umbrella bases, so that at least five percent of the exterior seating provides compliant knee and toe clearance; by providing accessible tables among the interior seating; and by lowering a portion of the dining counter or providing an accessible table in the same area. The interior route can be made accessible by rearranging tables and chairs to provide a 36-inch clear route. The service counter can be made accessible by lowering a 36-inch portion of the counter. The restroom barriers can be remedied by reinstalling or replacing the grab bars, relocating the toilet paper dispenser and flush control, lowering the mirror and paper towel dispenser or hand dryer, modifying the lavatory to provide knee and toe clearance, replacing the door handle and privacy

lock with accessible hardware, and reconfiguring fixtures to provide the required clearances and turning space. Such modifications are commercially available, are routinely implemented in places of public accommodation, and can be accomplished without much difficulty or expense, particularly in light of Defendants' financial resources and the benefits of providing equal access. Accordingly, the cost of remediation is far outweighed by the substantial benefit of providing equal access.

40. In the alternative, if it is not readily achievable for Defendants to remove any of the barriers alleged herein, then Defendants violated the ADA by failing to make the Restaurant's goods, services, facilities, privileges, advantages, and accommodations available through alternative methods that are readily achievable.

<u>Failure to Alter in Compliance with the ADA</u>

41. Plaintiff is further informed and believes, and on that basis alleges, that the Restaurant was altered after January 26, 1992.

42. The ADA requires that a facility altered in a manner that affects or could affect its usability be made readily accessible to and usable by individuals with disabilities to the maximum extent feasible, and that alterations to an area containing a primary function include an accessible path of travel to the altered area and accessible restrooms serving it, to the extent not disproportionate in cost. Defendants failed to do so.

<u>Failure to Maintain Accessible Features and to Modify Policies</u>

43. A public accommodation "shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). Defendants have violated this regulation by failing to keep dining surfaces and the accessible route free of furniture, umbrella bases, and other obstructions, as alleged

above.

Relief Sought

44. Defendants' violations are ongoing. Plaintiff has been, and absent injunctive relief will continue to be, subjected to discrimination on the basis of his disability in violation of Title III of the ADA. Plaintiff has no adequate remedy at law.

45. Pursuant to 42 U.S.C. § 12188(a)(2), Plaintiff is entitled to injunctive relief requiring Defendants to alter the Restaurant to make it readily accessible to and usable by individuals with disabilities to the extent required by the ADA, and to modify their policies, practices, and procedures as necessary. An actual controversy exists between Plaintiff and Defendants concerning the Restaurant's compliance with the ADA, and Plaintiff is entitled to a declaration of the parties' rights and obligations.

46. Plaintiff is entitled to recover his reasonable attorneys' fees, litigation expenses, including expert fees, and costs pursuant to 42 U.S.C. § 12205.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. For a declaration that, at the commencement of this action, Defendants were in violation of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, by failing to provide full and equal access to the Restaurant for individuals with mobility disabilities, as alleged herein;

b. For an injunction pursuant to 42 U.S.C. § 12188(a)(2) requiring Defendants to remove the barriers to access identified in this Complaint, and any other barriers related to Plaintiff's disability identified during this litigation, and to make the Restaurant readily accessible to and usable by individuals with disabilities to the extent required by the ADA, including by providing accessible

exterior and interior dining surfaces, an accessible dining counter or equivalent, an accessible route through the dining areas, an accessible service counter, and an accessible restroom;

c. For an injunction requiring Defendants to adopt and implement policies, practices, and procedures to ensure that accessible seating and the accessible route are maintained free of obstructions and that all accessible features are maintained in operable working condition;

d. For reasonable attorneys' fees, litigation expenses, including expert fees, and costs of suit pursuant to 42 U.S.C. § 12205; and

e. For such other and further relief as the Court deems just and proper.

Dated: October 2, 2026

ALLACCESS LAW GROUP

*/s/ Irakli Karbelashvili*

IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER